IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 2:07-cv-1944 MCE JFM PS |
| vs. | |
| LELA D. KIMBALL BEVAN and RICHARD C. KIMBALL, | |
| Defendants. | FINDINGS AND RECOMMENDATIONS |

Plaintiff's motion for summary judgment came on regularly for hearing December 4, 2008. Kari D. Larson, Trial Attorney, Tax Division, United States Department of Justice, appeared telephonically. There was no appearance for defendants. Upon review of the motion and the documents in support and opposition, upon hearing the arguments of plaintiff and counsel and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

Plaintiff moved for entry of summary judgment declaring that defendants Lela D. Kimball Bevan and Richard C. Kimball are liable for the outstanding estate taxes of the estate of Lela D. Kimball (the "Decedent"), plus interest and statutory additions which continue to accrue, as provided by law, until paid in full. The decedent's gross estate was composed, in part, of assets held by the Lela D. Kimball Trust, of which Ms. Kimball Bevan was a trustee. Plaintiff seeks judgment against defendants Lela D. Kimball Bevan and Richard C. Kimball pursuant to 26 U.S.C. § 6324(a)(2).

1  On November 12, 2008, defendant Bevan filed a document entitled "Notice: Timely Return of: (1) Declaration of Kari D. Larson in Support of United States Motion for Summary Judgment (2) United States Notice of Motion and Motion for Summary Judgment (3) United States' Statement of Undisputed Facts in Support of Motion for Summary Judgment (4) Memorandum of Points and Authorities in Support of United States' Motion for Summary Judgment (5) Proposed Order Granting United States' Motion for Summary Judgment (6) Declaration of Maureen Neal in Support of United States' Motion for Summary Judgment and (Exhibits 1-6) as Unaccepted, Irrelevant, and Immaterial Documents." It appears defendant Bevan has returned the moving papers of plaintiff and stamped the title page of each document with the following language:

> "WE DO NOT ACCEPT THIS OFFER/WE DO NOT CONSENT TO ACT AS SURETY/WE DO NOT CONSENT TO ANY FURTHER PROCEEDINGS AS PER JUDGMENT OF NON-PROS 0808108 DATED JANUARY 8, 2008 AND ORDER 080318 FILED ON MARCH 20, 2008/EFFECTIVE ON APRIL 15, 2008 WITH THE CONSENT OF ALL CONCERNED/THIS CASE IS CLOSED."

Id. Each stamp was dated November 6, 2008 and signed by Lela D. Kimball Bevan, a woman. Defendant Kimball did not sign any of the documents contained within the November 12, 2008 filing.[1]

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

---

[1] On November 17, 2008, defendant Bevan also filed notices and demands for identification and credentials quo warranto for Morrison C. England and John F. Moulds, request for docket corrections and demand for credentials and judicial questionnaire. (Docket Nos. 40-43.) On November 24, 2008, defendant Bevan filed a document entitled "Notice of Sanction #1 for Errors Contained in Declaration of Kari D. Larson." (Docket No. 44.) On December 1, 2008, defendant Bevan filed a document entitled "Notice: Timely Return of: 'United States' Reply to Defendants' Response to United States Motion for Summary Judgment." (Docket No. 46.) These documents are not responsive to the motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure contemplates the filing of a motion, an opposition and a reply. Id.

> Under summary judgment practice, the moving party
>
> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). If the adverse party does not respond as required, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

Defendants have failed to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, or even to contend that a dispute of material fact exists.  Rather, it appears defendants believe this court has no jurisdiction over this matter, but have presented no legal authority for said belief.  Defendants have raised no substantive arguments nor addressed any of the issues, facts or law raised by plaintiff herein.  Defendants' notice of timely return does not comply with Fed. R. Civ. P. 56 or Local Rule 56-260.  Accordingly, the court adopts the following facts as undisputed:

  1. This action was brought by plaintiff to obtain a judgment for the outstanding federal estate tax liabilities of the estate of Lela D. Kimball (the "estate") against Lela D. Kimball Bevan ("Ms. Bevan") and Richard C. Kimball ("Mr. Kimball").  See Docket Entry # 5.

  2. The decedent died testate on October 23, 1993.  See Complaint, ¶ 7; Exs. 2 & 5, page 2, lines 24 & 27, to Larson Decl.

  3. Ms. Bevan is the decedent's daughter.  See Complaint, ¶ 5; Ex. 2, page 2, line 15, to Larson Decl.

  4. Mr. Kimball is the decedent's son.  See Complaint, ¶ 6; Ex. 5, page 2, line 21, to Larson Decl.

  5. After the decedent's death, an estate tax return (the "return") was filed with the Internal Revenue Service ("IRS") on July 24, 1994.  See Complaint, ¶ 8; Exs. 2 & 5, page 3, line 6.  The return reported decedent's gross estate to be $2,911,615.00.  See Complaint, ¶ 8; Exs. 2 & 5, page 3, lines 17 & 18, to Larson Decl.  The return reported federal estate taxes due and owing in the amount of $756,438.00.  See Complaint, ¶ 8; Exs. 2 & 5, page 3, lines 21 & 22, to Larson Decl.

  6. The IRS conducted an audit of the estate's return, and after completion of the audit, the IRS made additional assessments of tax, penalties, and interest against the estate.  See Complaint, ¶ 8; Exs. 2 & 5, page 3, line 35 & page 4, lines 18 - 20, to Larson Decl.  At the time this action was initiated, the estate was indebted to plaintiff in the amount of $2,905,553.67, plus

1 penalties and interest, which continued to accrue until paid in full.  See Complaint, ¶ 8; Exs. 2 &
5, page 5, lines 14 - 18, to Larson Decl.

7. Decedent's estate contained property from Frank C. Kimball's estate, which should have been included in the return that was filed.  See Exs. 2 & 5, page 4, lines 1; 4 - 5, to Larson Decl.

8. Decedent's gross estate was composed, in part, of assets that were held by the Lela D. Kimball Trust (the "trust").  See Complaint, ¶ 11; Exs. 2 & 5, page 6, line 27 through page 7, lines 1 - 14, to Larson Decl.

9. Ms. Bevan was a trustee of the trust.  See Complaint, ¶¶ 5 & 6; Exs. 2 & 5, page 5, line 26 & page 6, lines 7 - 8, to Larson Decl.

10. At the time of the decedent's death, the trust held the following assets, with the values listed:

| Property | Value at Decedent's Death |
|---|---|
| 1. 75,420 shares of Marriott International Corp. Common Stock | $1,932,637.50 |
| 2. 75,420 shares of Host Marriott Corp. Common Stock | $754,200.00 |
| 3. University of California, RFDG Rev Multipurpose Bonds | $49,400.00 |
| 4. Jurupa California Community Service Bonds | $48,380.00 |
| 5. Desert Hot Springs California Tax Allocation RFD Bonds | $49,500.00 |
| 6. Monterey County CA Cop Sheriff's Facility Bonds | $47,607.00 |
| 7. So. Cal. Pub. Pwr. Auth. Ref. Series A Bonds | $47,710.00 |
| 8. Oxnard CA. Fin. Auth. Waste Wtr | $97,980.00 |
| 9. Calleguas Las Virgenes CA Pub. Fin. Auth. Water Bonds | $50,450.50 |

| 10. Los Angeles CA. Conv. & Exhib. Rev. Bonds | $48,080.00 |
|---|---|
| **TOTAL** | **$3,125,945.00** |

See Complaint, ¶ 11; Exs. 2 & 5, page 6, line 27 through page 7, line 14, to Larson Decl.

11. At the time of the decedent's death, the value of the assets held by the trust was $3,125,945.00. Id.

12. As trustee of the trust, Ms. Bevan is liable for the unpaid taxes owed by the decedent's estate. See Complaint ¶ 12; Ex. 2 to Larson Decl.

13. Notice and demand for payment of the outstanding tax liabilities was made on Ms. Bevan. See Exs. 2 & 5, page 4, lines 23 - 24 & 27 through page 5, line 2 & lines 5 - 7.

14. Despite notice and demand for payment of the assessments, the estate and Ms. Bevan have neglected, failed or refused to pay the federal tax assessments made against the estate. See Exs. 2 & 5, page 5, lines 14 - 18, to Larson Decl.

15. At the time of the decedent's death, the following assets, with the values listed, were transferred from the trust to Ms. Bevan:

| Property Transferred | Value at Decedent's Death |
|---|---|
| 1. Shares of Marriott International Corp. Common Stock (Basis of calculation: 29,284.32 shares @ $25.625/sh) | $750,410.70 |
| 2. Shares of Host Marriott Corp. Common Stock (Basis of calculation: 22,732 shares @ $10/sh) | $227,320.00 |
| **TOTAL** | **$977,730.70** |

See Complaint, ¶ 13; Exs. 2 & 5, page 7, lines 22 - 28, to Larson Decl.

16. At the time of the decedent's death, the value of the assets transferred from the trust to Ms. Bevan was $977,730.70. Id.

/////

7

17. Ms. Bevan is liable for the unpaid taxes owed by the decedent's estate as a beneficial transferee. See Complaint, ¶¶ 13 and 14.

18. At the time of the decedent's death, the following assets, with the values listed, were transferred from the trust to Mr. Kimball:

| Property Transferred | Value at Decedent's Death |
|---|---|
| 1. Shares of Marriott International Corp. Common Stock (Basis of calculation: 46,135.50 shares @ $25.625/sh) | $1,182,222.19 |
| 2. Shares of Host Marriott Corp. Common Stock (Basis of calculation: 40,238 shares @ $10/sh) | $402,380.00 |
| **TOTAL** | **$1,584,602.19** |

See Complaint, ¶ 16; Exs. 2 & 5, page 8, lines 5 - 10, to Larson Decl.

19. At the time of the decedent's death, the value of the assets transferred from the trust to Mr. Kimball was $1,584,602.19. Id.

20. Mr. Kimball is liable for the unpaid taxes owed by the decedent's estate as beneficial transferee. See Complaint, ¶ 17; Ex. 5 to Larson Decl.

21. Before assets were transferred from the trust to Ms. Bevan and Mr. Kimball, they met to discuss the value of the assets and how they would be transferred. See Exs. 2 & 5, page 6, lines 18 - 19, to Larson Decl.

22. Ms. Bevan and Mr. Kimball determined the value of the assets. Id.; Exs. 2 & 5, page 6, lines 22 - 24, to Larson Decl.

23. Ms. Bevan and Mr. Kimball determined which assets would be transferred to them. Exs. 2 & 5, page 6, lines 15, 18 - 19, & 22 - 24, to Larson Decl.

24. With regard to plaintiff's First Request for Admissions, First Set of Interrogatories, and First Request for Production of Documents to Ms. Bevan and Mr. Kimball, they each failed to respond. See Larson Decl. ¶¶ 6 and 10.

/////

25.  As of September 30, 2008, the estate remains indebted to plaintiff in the amount of $3,330,743.46, plus statutory interest and other statutory additions as provided by law, which continue to accrue until paid in full.  See Ex. 1 to Neal Decl.

## ANALYSIS

In an action to collect federal taxes, plaintiff bears the initial burden of proof.  See Palmer v. Internal Revenue Service, 116 F.3d 1309, 1312 (9th Cir. 1997).  That burden can be satisfied through introduction of proof of the tax assessments, which are entitled to a presumption of correctness so long as they are supported by a minimal factual foundation.  Id.; see also United States v. Stonehill, 702 F.2d 1288, 1293 (9th Cir. 1983), cert. denied, 465 U.S. 1079 (1984).

Certificates of Assessments and Payments (Forms 4340) are "routinely used to prove that assessment[s] ha[ve] in fact been made," Rocovich v. United States, 933 F.2d 991, 994 (Fed. Cir. 1991), and are presumptive, self-authenticating proof of a valid assessment.  See, e.g., Hughes v. United States, 953 F.2d 531, 535 (9th Cir. 1992).  Forms 4340 are highly probative and, in the absence of contrary evidence, are sufficient to establish that an assessment was properly made and that notices and demand for payment were sent.  Hughes, 953 F.2d at 535.

In this case, the Certificate of Assessments and Payments for the tax year at issue is attached as Exhibit 1 to the Declaration of Kari D. Larson, submitted herewith.  The Certificate establishes that the tax liabilities were properly assessed against the estate (26 U.S.C. §§ 6201-6203), and that the notices and demand for payment of the liabilities were properly sent (26 U.S.C. §§ 6303(a) and 6321).  See, e.g., United States v. Chila, 871 F.2d 1015, 1017-1019 11th Cir. 1989).

Additionally, the determination and assessment of the aforementioned tax liabilities are further supported by the defendants' failure to respond to plaintiff's First Request for Admissions, attached as Exhibits 2 and 5 to the Larson Decl.  Fed. R. Civ. P. 36.

Defendants have failed to present any claims or defenses averring that they are not indebted to plaintiff in the amounts claimed or that plaintiff is not entitled to seek relief to collect the outstanding tax liabilities. Defendants have not provided any evidence suggesting they have a meritorious basis to oppose plaintiff's claim for unpaid taxes, penalties and interest. Accordingly, the Certificate of Assessments and Payments and the defendants' deemed admissions conclusively establish, as a matter of law, the elements of the plaintiff's claims to obtain a judgment against Lela D. Kimball Bevan and Richard C. Kimball for the estate's outstanding tax liabilities. Plaintiff is entitled to summary judgment against defendants.

Title 26 U.S.C. § 6324(a)(1) provides for a federal tax lien upon the gross estate of a decedent for ten years after the date of death. Id. In this case, the federal estate tax lien expired on October 25, 2003. However, 26 U.S.C. § 6324(a)(2) also imposes personal liability for any unpaid federal estate tax on a trustee or a transferee who receives, or has on the date of the decedent's death, property included in the gross estate under 26 U.S.C. §§ 2034 to 2042, to the extent of the value, at the time of the decedent's death, of such property. See 26 U.S.C. § 6324(a)(2); 26 C.F.R. § 301.6324-1. The personal liability provided for in 26 U.S.C. § 6324(a)(2) applies only to the beneficiaries of non-probate assets. See 26 U.S.C. § 6324(a)(2); see also Roe v. Farrell's Estate, 372 N.E.2d 662 (Ill. 1978) (federal estate tax is imposed on transfer of taxable estate as a whole; if a decedent's probate assets are insufficient to satisfy federal estate tax, persons holding non-probate assets, included by law in federal gross estate, are liable to the extent of the value of those assets, and the tax becomes a lien against those assets if the tax is not satisfied in full).

Personal liability, assessed pursuant to 26 U.S.C. § 6324(a)(2), may be asserted without a transferee assessment under 26 U.S.C. § 6901, and after the expiration of the ten year estate tax lien provided for in 26 U.S.C. 6324(a)(1), since the period of limitations in which to assert this liability in federal district court is measured by the collection limitations period applicable to the transferor estate. See United States v. DeGroft, 539 F.Supp. 42 (S. Md. 1981);

see also United States v. Geniviva, 16 F.3d 522 (3rd Cir. 1994) and United States v. Russell, 532 F.2d 175 (10th Cir. 1976) (both holding that transferee assessment limitations provision contained in 26 U.S.C. § 6901(c) is not applicable to, nor a bar to pursuing, the 26 U.S.C. § 6324(a)(2) personal liability of a non-probate property holder or transferee in federal district court and that a transferee assessment pursuant to 26 U.S.C. § 6901 is not a prerequisite to such an action); United States v. Botefuhr, 309 F.3d 1263 (10th Cir. 2002) (the ten years lien in the parallel 26 U.S.C. 6324(b) gift tax provision does not create a statute of limitations for collecting gift taxes from the personally liable donee-transferees).

In this case, the 26 U.S.C. 6324(a)(2) non-probate property that was included in the estate consists of property in the trust at the time of the decedent's death as follows:

| Property | Value at Decedent's Death |
|---|---|
| 1. 75,420 shares of Marriott International Corp. Common Stock | $1,932,637.50 |
| 2. 75,420 shares of Host Marriott Corp. Common Stock | $754,200.00 |
| 3. University of California, RFDG Rev Multipurpose Bonds | $49,400.00 |
| 4. Jurupa California Community Service Bonds | $48,380.00 |
| 5. Desert Hot Springs California Tax Allocation RFD Bonds | $49,500.00 |
| 6. Monterey County CA Cop Sheriff's Facility Bonds | $47,607.00 |
| 7. So. Cal. Pub. Pwr. Auth. Ref. Series A Bonds | $47,710.00 |
| 8. Oxnard CA. Fin. Auth. Waste Wtr | $97,980.00 |
| 9. Calleguas Las Virgenes CA Pub. Fin. Auth. Water Bonds | $50,450.50 |
| 10. Los Angeles CA. Conv. & Exhib. Rev. Bonds | $48,080.00 |
| **TOTAL** | **$3,125,945.00** |

See Complaint, ¶ 11; Exs. 2 & 5, page 6, line 27 through page 7, line 14, to Larson Decl.

Ms. Bevan was the trustee of the trust.  See Complaint, ¶¶ 5 and 6; Exs. 2 & 5, page 5, line 26 & page 6, lines 7 - 8, to Larson Decl.  During the time she was trustee, she was involved in the transfer of assets from the estate.  See Exhibit 2 to Larson Decl., page 6, line 15.  Ms. Bevan and Mr. Kimball determined the value assigned to each asset held by the estate. Exs. 2 & 5, page 6, lines 22 - 24, to Larson Decl.  Ms. Bevan and Mr. Kimball further determined which assets from the estate would be transferred to them.  Exs. 2 & 5, page 6, lines 15, 18-19, & 22-24, to Larson Decl.  Pursuant to their joint decision, the following non-probate assets were transferred to Ms. Bevan from the estate:

| Property Transferred | Value at Decedent's Death |
|---|---|
| 1. Shares of Marriott International Corp. Common Stock (Basis of calculation: 29,284.32 shares @ $25.625/sh) | $750,410.70 |
| 2. Shares of Host Marriott Corp. Common Stock (Basis of calculation: 22,732 shares @ $10/sh) | $227,320.00 |
| **TOTAL** | **$977,730.70** |

See Complaint, ¶ 13; Exs. 2 & 5, page 7, lines 22 - 28, to Larson Decl.

Pursuant to their joint decision, the following non-probate assets were transferred to Mr. Kimball from the estate:

| Property Transferred | Value at Decedent's Death |
|---|---|
| 1. Shares of Marriott International Corp. Common Stock (Basis of calculation: 46,135.50 shares @ $25.625/sh) | $1,182,222.19 |
| 2. Shares of Host Marriott Corp. Common Stock (Basis of calculation: 40,238 shares @ $10/sh) | $402,380.00 |
| **TOTAL** | **$1,584,602.19** |

See Complaint, ¶ 16; Exs. 2 & 5, page 8, lines 5 - 10, to Larson Decl.

/////

Both Ms. Bevan and Mr. Kimball have admitted that the trust held the assets described herein. See Complaint, ¶ 11; Exs. 2 & 5, page 6, line 27 through page 7, line 14, to Larson Decl. Both Ms. Bevan and Mr. Kimball have admitted that certain assets, described herein, were transferred to them from the estate. See Complaint, ¶¶ 13 & 16; Exs. 2 & 5, page 7, lines 22-28 & page 8, lines 5 - 10, to Larson Decl. Both Ms. Bevan and Mr. Kimball have admitted that they determined the value of the assets of the estate. Exs. 2 & 5, page 6, lines 22-24, to Larson Decl. Pursuant to 26 U.S.C. 6324(a)(2), Ms. Bevan is liable for the estate's unpaid tax liabilities as both trustee of the trust and as a beneficial transferee of non-probate assets she acquired upon the decedent's death. Ms. Bevan's personal liability for the estate's unpaid tax liabilities, as trustee of the trust, is $3,125,945.00, which is the value of the assets held by the trust on the date of the decedent's death.[2] See 26 U.S.C. § 6324(a)(2). Ms. Bevan's personal liability, for the estate's unpaid tax liabilities, as a beneficial transferee is $977,730.70, which is the value of the transferred to Ms. Bevan, which were held by the trust on the date of the decedent's death.

Pursuant to 26 U.S.C. 6324(a)(2), Mr. Kimball is also liable for the estate's unpaid tax liabilities as a beneficial transferee of non-probate assets she acquired upon the decedent's death. Mr. Kimball's personal liability, for the estate's unpaid tax liabilities, as a beneficial transferee is $1,584,602.19, which is the value of the transferred to Mr. Kimball, which were held by the trust on the date of the decedent's death.

The evidence demonstrates Lela D. Kimball Bevan is indebted to plaintiff, both as a trustee and a beneficial transferee of the estate of Lela D. Kimball, for tax, interest, and penalties assessed against the estate of Lela D. Kimball, plus additional statutory interest and other statutory additions as provided by law.

---

[2] This amount is greater than the amount of the original assessments of tax, penalties and interest made against the estate because, as of September 30, 2008, the amount of the estate's outstanding tax liabilities is $3,330,743.46, plus statutory interest and other statutory additions as provided by law, which continue to accrue until paid in full.

1    The evidence demonstrates Richard C. Kimball is indebted to plaintiff, as a
2  beneficial transferee of the estate of Lela D. Kimball, for tax, interest, and penalties assessed
3  against the estate of Lela D. Kimball, plus additional statutory interest and other statutory
4  additions as provided by law.
5    As set forth above, there are no genuine issues of material fact remaining and
6  plaintiff is entitled to judgment as a matter of law.
7    GOOD CAUSE APPEARING, IT IS HEREBY RECOMMENDED that:
8    1. Judgment be entered in favor of plaintiff and against defendant Lela D.
9  Kimball Bevan, personally, in her representative capacity as trustee of the Lela D. Kimball Trust,
10 in the amount of $3,125,945.00, for the outstanding federal tax liabilities of the estate of Lela D.
11 Kimball, plus statutory interest and other statutory additions as provided by law, which continue
12 to accrue from August 24, 2004, the date in which notice of the outstanding liabilities was given,
13 until paid in full, pursuant to 26 U.S.C. §§ 6601, 6621 and 6622 and 28 U.S.C. § 1961(c).
14    2. Judgment be entered in favor of plaintiff and against defendant Lela D.
15 Kimball Bevan, personally, as a beneficial transferee of the Lela D. Kimball Trust, in the amount
16 of $977,730.70, for the outstanding federal tax liabilities of the estate of Lela D. Kimball, plus
17 statutory interest and other statutory additions as provided by law, which continue to accrue from
18 August 24, 2004, the date in which notice of the outstanding liabilities was given, until paid in
19 full, pursuant to 26 U.S.C. §§ 6601, 6621 and 6622 and 28 U.S.C. § 1961(c).
20    3. Judgment be entered in favor of plaintiff and against defendant Richard C.
21 Kimball, personally, as a beneficial transferee of the Lela D. Kimball Trust, in the amount of
22 $1,584,602.19, for the outstanding federal tax liabilities of the estate of Lela D. Kimball, plus
23 statutory interest and other statutory additions as provided by law, which continue to accrue from
24 August 24, 2004, the date in which notice of the outstanding liabilities was given, until paid in
25 full, pursuant to 26 U.S.C. §§ 6601, 6621 and 6622 and 28 U.S.C. § 1961(c).
26 /////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 9, 2008.

UNITED STATES MAGISTRATE JUDGE

001; bevan.msj